[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 25, 2005
THOMAS  K. KAHN
CLERK

_____

No. 04-16189
Non-Argument Calendar

_____

Agency Nos. A78-352-110
&A78-352-111

OLGA LUCIA BUITRAGO CASTRO,
JIMENA BRAVO BUITRAGO,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(July 25, 2005)**

Before BIRCH, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

Olga Lucia Buitrago Castro (Buitrago) and Jimena Bravo Buitrago (Jimena) petition this Court for review of the Bureau of Immigration Appeals' (BIA's) decision denying their application for asylum and withholding of removal under the Immigration and Nationality Act (INA) and the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment (CAT). Petitioners argue the BIA erred in finding they had not established past persecution or a well-founded fear of future persecution, and in denying them CAT relief.[1] We deny the petition.

## I. BACKGROUND

Buitrago, a native and citizen of Colombia, entered the United States on February 26, 2000, as a nonimmigrant visitor. She subsequently submitted a claim for asylum and withholding of removal, alleging persecution on account of her political opinion and membership in a particular social group. To supplement her application, Buitrago submitted several newspaper articles describing the kidnapping and subsequent release of two of her uncles from their farm by an armed guerilla group, the Revolutionary Armed Forces of Columbia (FARC). She submitted affidavits confirming that Buitrago was the niece of the kidnaped men

---

[1] Olga Lucia Buitrago Castro is the primary applicant; her daughter was a derivative applicant but then submitted her own application upon reaching the age of majority. Buitrago's case was consolidated with her daughter's, and we refer to Buitrago and her claims for relief.

2

and the family had received numerous threats from the FARC. Buitrago also submitted an affidavit from her father, Guillermo Buitrago Hurtado (Hurtado), in which he stated he had dedicated his life to politics, "without ever having had problems of any sort, nor threats due to the act of being a politician." He further stated he had worked to support the presidential campaign of Alvaro Uribe Velez (Uribe), and the FARC guerillas had declared political persecution against all political leaders supporting Uribe. According to Hurtado, he received insulting telephone calls notifying him of attempts against his life and his family, and specifically reminding him that he had a daughter and granddaughter in the United States.

At a hearing on Buitrago's asylum application, conducted in November 2002, Buitrago testified she was afraid to return to Colombia because of previous difficulties with the FARC. According to Buitrago, after the FARC kidnapped her uncles in 1997, the family paid a ransom of $250,000 each for their return. She testified that, one year later, the FARC threatened her mother, asking for money and cattle. She further testified her father also had problems with the FARC due to his work in support of Uribe's presidential candidacy. Buitrago stated that, prior to his involvement, her father had never had any major difficulties due to his

political participation. She testified she personally received calls from the FARC in her office and at home over a four-year period, asking her for money.

On cross-examination, Buitrago testified that no one in her family had been harmed since her uncles were kidnaped. She further testified she was never actively involved in her father's politics. In response to a question from the IJ, Buitrago stated the elections had passed, and Uribe was the new president. According to Buitrago, her father was now retired from politics. She stated the FARC had kidnapped and currently was holding a retired politician, who was a contemporary of her father, to exchange him for their own political prisoners.

The IJ found Buitrago's testimony credible. However, the IJ found the FARC's demands for money, kidnapping, and ransom were clearly related to its efforts to fund its activities rather than as an effort to punish the family for its perceived politics. The IJ thus found these threats were not past persecution, and did not establish a well-founded fear of persecution in the future. The IJ further found the activities of Buitrago's father in support of Uribe's campaign established no past persecution nor a well-founded fear of future persecution, because (1) the threats made in the last months of the campaign were made to any and all identified supporters, (2) the father's involvement was limited, and (3) his involvement had ended because the campaign was now over. The IJ noted there

4

was no evidence in the record that any Uribe supporters have been threatened or harmed following Uribe's victory. The IJ found the kidnapping of Hurtado's contemporary was an effort to make an exchange for FARC members in custody of the government, rather than punishment for a political opinion. Therefore, the IJ concluded Buitrago had not established she qualified as a refugee under the asylum statute. The IJ further found Buitrago failed to meet the higher standard necessary to show eligibility for withholding of removal. According to the IJ, Buitrago was not eligible for relief under the CAT because she had not shown that anticipated torture would be at the hands of the government or with the acquiescence and foreknowledge of the government. The IJ also found the government's inability to control a non-governmental entity was not a basis for relief under the convention.

Buitrago appealed to the BIA, which summarily affirmed the IJ's decision, pursuant to 8 C.F.R. § 1003.1(e)(4). This petition for review followed.

## II. DISCUSSION

On appeal, Buitrago argues the IJ erred in denying her request for asylum and withholding of removal because she established past persecution and a well-founded fear of future persecution due to the kidnaping, harassment, intimidation, and death of her family members. She contends the persecution by

5

the FARC was on the basis of her membership in a particular social group—her nuclear family—as well as the political opinion imputed to her family based on her father's political career and support of Uribe's presidential candidacy. Furthermore, she argues the IJ erred in stating that, to obtain CAT relief, she was required to show that the government officials have specific knowledge of the acts constituting torture.

When the BIA does not render its own opinion but rather adopts the IJ's opinion, then we review the IJ's decision. *D-Muhumed v. United States Attorney Gen.*, 388 F.3d 814, 818 (11th Cir. 2004). Legal determinations are reviewed de novo. *Id.* at 817. Factual determinations are reviewed under the substantial evidence test, and we must affirm the decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* at 817–18 (quotation omitted).

An alien who arrives in or is present in the United States may apply for asylum. 8 U.S.C. § 1158(a)(1). The Attorney General has discretion to grant asylum if the alien meets the definition of a "refugee." 8 U.S.C. § 1158(b)(1). A "refugee" is:

> any person who is outside any country of such person's nationality . . . who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of

persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A).

The asylum applicant carries the burden of proving statutory "refugee" status. *D-Muhumed*, 388 F.3d at 818. An alien is entitled to asylum if he can establish, with specific and credible evidence: (1) past persecution on account of his membership in a particular social group or other statutorily-listed factor, or (2) a "well-founded fear" his membership in a particular social group or other statutorily-listed factor will cause future persecution. 8 C.F.R. § 208.13(a), (b). A "well-founded fear" of future persecution may be established by showing (1) past persecution which creates a presumption of a well-founded fear and overcomes any rebuttal by the INS, (2) a reasonable possibility of personal persecution that cannot be avoided by relocating within the subject country, or (3) a pattern or practice in the subject country of persecuting members of a statutorily-defined group of which the alien is a part. 8 C.F.R. § 208.13(b)(1), (2). The "well-founded fear" inquiry has both a subjective and objective component—that is, the applicant must show that his fear of persecution is subjectively genuine and objectively reasonable. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1289 (11th Cir. 2001). The subjective component is generally satisfied by the applicant's credible

7

testimony he genuinely fears persecution. *Id.* "In most cases, the objective prong can be fulfilled either by establishing past persecution or that he has a good reason to fear future persecution." *Id.* (quotation omitted).

To qualify for asylum based on persecution by a guerilla group on account of a political opinion, the applicant must establish the guerillas persecuted her or will seek to persecute her in the future *because of* her actual or imputed political opinion. *INS v. Elias-Zacarias*, 112 S. Ct. 812, 816 (1992); *Sanchez v. United States Attorney Gen.*, 392 F.3d 434, 437–38 (11th Cir 2004). "It is not enough to show that she was or will be persecuted or tortured due to her refusal to cooperate with the guerillas." *Sanchez*, 392 F.3d at 438. The applicant must also establish a causal connection between the political opinion and the feared persecution, presenting "specific, detailed facts showing a good reason to fear that [she] will be *singled out* for persecution on account of such an opinion." *Al Najjar*, 257 F.3d at 1287 (quotation omitted).

"Where an applicant is unable to meet the 'well-founded fear' standard for asylum, he is generally precluded from qualifying for either asylum or withholding of deportation." *Id.* at 1292–93 (quotation omitted). "The burden of proof for an applicant seeking withholding of removal under the [CAT], like that for an

8

applicant seeking withholding of removal under the statute, is higher than the burden imposed on an asylum applicant." *Id.* at 1303.

Even assuming *arguendo* Buitrago's status as a member of her nuclear family placed her in a protected social group, she has failed to show past persecution or a well-founded fear of future persecution on that ground because the actions of the FARC are related to their fundraising activities and efforts to get its members released from prison. As to Buitrago's claim of persecution on account of imputed political opinion, substantial evidence supports the IJ's finding the FARC's kidnapping of Buitrago's uncles and subsequent harassment of the family, other than the calls regarding Uribe, were intended to raise funds rather than to punish Buitrago's family for its imputed political opinion. *See Elias-Zacarias*, 112 S. Ct. at 815–16; *Sanchez*, 392 F.3d at 438. Buitrago testified the FARC released her uncles after the family paid a ransom, and the calls to her and her mother asked for money and cattle.

Substantial evidence also supports the IJ's finding Buitrago did not have a well-founded fear of future persecution on the basis of Hurtado's political activities, including his support of Uribe. Hurtado stated in his affidavit he had never had any significant problems as a result of his prior political activities, and Buitrago confirmed this in her testimony. There was no evidence in the record

9

that any Uribe supporters have been threatened or harmed following Uribe's victory, so any danger from Hurtado's support of Uribe during his candidacy has passed. Moreover, Hurtado has retired from political activity. Additionally, Buitrago herself testified that the kidnapping of Hurtado's retired contemporary was an effort by the FARC to make an exchange for FARC members in custody of the government. Thus, substantial evidence supports the IJ's determination Buitrago failed to establish she was entitled to asylum. *Al Najjar*, 257 F.3d at 1303.

Because Buitrago was unable to meet the lower standard of proof to show that she was qualified for asylum, she did not establish that she was entitled to either withholding of removal or CAT relief, both of which have a higher burden of proof.

### III. CONCLUSION

Substantial evidence supports the IJ's determination the FARC's demands for money, kidnaping, and ransom were efforts to fund its activities rather than persecution on account of Buitrago's imputed political opinion or membership in a particular social group, and thus Buitrago has failed to show she is entitled to asylum or withholding of removal. Since she cannot establish she is entitled to

asylum, the IJ did not err in determining she is not entitled to withholding of removal or CAT relief, which require a higher standard of proof. Accordingly, we deny her petition.

PETITION DENIED.